**In the Matter of ETC, INC., Bankrupt.
No. 15630.**

United States District Court
W. D. Michigan, S. D.
Sept. 28, 1961.

54

Hartwig & Crow, and Joseph D. Hartwig, Benton Harbor, Mich., for petitioner.

Miller, Canfield, Paddock & Stone, and Edgar H. Ailes, Detroit, Mich., for respondent.

White, Klute & White and Harold F. Klute, Niles, Mich., for bankrupt.

Wendell A. Miles, and Robert J. Danhof, Grand Rapids, Mich., for the United States.

STARR, Senior Judge.

Upon involuntary petition filed February 28, 1958, ETC, Inc., was adjudged a bankrupt on March 19, 1958, and George F. LaBour was appointed and qualified as receiver of the bankrupt's estate. Subsequently, on June 8, 1958, he was elected and qualified as trustee.

From the record of the proceedings before the referee in bankruptcy it appears that prior to May 1, 1954, Anaconda Wire and Cable Company, a Delaware corporation, had agreed to finance the bankrupt, ETC, Inc., an Illinois corporation doing business in the city of Niles, Berrien county, Michigan, and that as of May 10, 1954, ETC executed a promissory note whereby it agreed to pay Anaconda $150,000 "or whatever amount may be owing" to Anaconda as of May 31, 1955, in sixty equal monthly payments commencing June 1, 1955. The promissory note for $150,000 was to represent cash advanced and credit extended by Anaconda to ETC. To secure payment of its note, ETC executed a trust indenture as of May 10, 1954, covering its real estate, and also executed a "chattel mortgage" covering its manufacturing machinery, office equipment, and other personal property. It appears that the trust indenture and the chattel mortgage, as first drafted, both designated the Farmers and Merchants Bank of Benton Harbor, Michigan, as mortgagee and trustee, but when that bank declined to act, both instruments were redrafted to designate the Detroit Trust Company of Detroit, Michigan, as mortgagee and trustee. The redrafted trust indenture and chattel mortgage were both dated May 10, 1954, although it appears that they were actually executed by ETC on May 17th and by the Detroit Trust Company on May 18th. The trust indenture and chattel mortgage were forwarded by mail to the register of deeds for Berrien county, Michigan, and were filed May 19, 1954. It appears that subsequent to the execution by ETC of the promissory note, trust indenture, and chattel mortgage, Anaconda made advances to ETC to the extent of about $150,000, and that when the petition in bankruptcy was filed on February 28, 1958, ETC owed Anaconda a balance in excess of $80,000.

On April 23, 1957, one Daniel F. Kelly, a practicing attorney of Hammond, Indiana, filed an affidavit for renewal of the above-mentioned chattel mortgage, as required by Comp.Laws Mich.1948, § 566.-143, and in his affidavit Kelly stated that he made it "as attorney and for and on behalf of The Detroit Bank and Trust Company, trustee (formerly known as Detroit Trust Company)." However, the trustee in bankruptcy contends that this affidavit of renewal was invalid and did not effect a legal renewal of the chattel mortgage as to creditors of ETC, because the signature of the notary public on the affidavit and the fact that she was a notary public were not authenticated by the certificate of the clerk of a court of record in the Indiana county in which she acted, under the seal of the court, as required by Comp.Laws Mich.1948, § 617.14.

From undisputed testimony before the referee it appears that subsequent to the Bank's attempted renewal of the chattel mortgage on April 23, 1957, the Grover-Hendricks Company on and after September 17, 1957, extended credit to ETC without notice or knowledge of the existence of the chattel mortgage and that the indebtedness arising from that credit was not paid by ETC.

It appears that in 1957 ETC defaulted in the payments on its promissory note of May 10, 1954, to Anaconda, and upon being advised in February, 1958, that ETC was closing its factory, Anaconda arranged to have a former employee of ETC act as custodian to preserve and protect the property of ETC until further action. However, as later determined by the referee in bankruptcy, Anaconda did not take possession of the property prior to the bankruptcy proceedings.

On March 28, 1958, subsequent to the adjudication of ETC as bankrupt, an or-

der was entered, which provided that all of the bankrupt's property should be surrendered to its receiver for appraisal. On May 26th the Detroit Bank and Trust Company, successor to the Detroit Trust Company, (hereinafter referred to as the Bank) filed a petition for an order directing the receiver to surrender and abandon to it possession of all the real and personal property of the bankrupt covered by the trust indenture and chattel mortgage. In pursuance of an order of the referee in bankruptcy all property in the bankrupt's estate was offered for sale at public auction on June 4, 1958, and at that sale the Bank purchased the property for $80,000, which was paid to LaBour as receiver. This sale was subsequently confirmed by order of the referee on June 5th. On July 15th the Bank filed an amended petition for an order directing the trustee of the bankrupt's estate to surrender and deliver to it all the proceeds from the sale of the real and personal property, less such portion thereof as might be allocable to property of the bankrupt not covered by the trust indenture and chattel mortgage, and less such portion of the costs and expenses of the sale as the referee should determine to be properly allocable to the Bank.

Following a hearing and the taking of testimony, the referee in bankruptcy on December 8, 1958, filed an opinion and entered an order granting the petition of the Bank for reclamation of the proceeds of the sale and directing the trustee to pay to the Bank the sum of $73,199.11 less a proportionate share of the expenses of the sale. The referee based his opinion and order granting reclamation on the theory that the instrument entitled "chattel mortgage" covering the personal property of ETC was not a chattel mortgage but was a trust mortgage, for which an affidavit of renewal was not required under the State chattel-mortgage-recording law.

■ On December 12, 1958, the trustee in bankruptcy filed a petition for review of the referee's order of December 8th. No question is raised by the trustee as to the validity of the trust inden-

ture covering the real estate of ETC, and the referee's holding that that indenture was valid should be affirmed. However, the trustee contends that the instrument entitled, "chattel mortgage" covering the personal property of ETC was in fact and law a chattel mortgage and is void as against him and the general creditors of the bankrupt, because it was not renewed by proper affidavit of renewal within 90 days preceding the expiration of three years from the date of filing on May 19, 1954, as required by the chattel-mortgage-recording statute, Comp.Laws Mich.1948, § 566.143. On the other hand, the petitioner Bank now contends that the instrument was not a chattel mortgage but was a trust mortgage and that under the provisions of the recording statute it was not necessary to file an affidavit of renewal of the instrument as a trust mortgage. Therefore, the first question presented is whether this instrument entitled "chattel mortgage" was a chattel mortgage requiring affidavit of renewal, or a trust mortgage not requiring renewal.

Comp.Laws Mich.1948, § 566.140 as amended by Act No. 153, Pub.Acts 1956, provides in part:

"Every mortgage or conveyance intended to operate as a mortgage of goods and chattels which shall hereafter be made which shall not be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers or mortgagees in good faith, unless the mortgage or a true copy thereof shall be filed in the office of the register of deeds of the county where the goods or chattels are located, and also where the mortgagor resides, * * * Provided, however, That any such mortgage shall not be void in the case of insolvency proceedings as against the creditors of the mortgagor if filed within 14 days from the date thereof; and unless the

mortgagor or mortgagee named in such mortgage or conveyance intended to operate as a mortgage, or some person having knowledge of the facts shall, *before the filing of the same,* make and annex thereto an affidavit setting forth that the consideration of said instrument was actual and adequate, and that the same was given in good faith for the purposes in such instrument set forth. No officer shall receive such instrument or file the same in his office until such affidavit is made and annexed thereto."

Comp.Laws Mich.1948, § 566.143, provides in part:

"Every such mortgage shall cease to be valid as against the creditors of the person making the same, or subsequent purchasers or mortgagees in good faith, after the expiration of 3 years from the filing of the same, or a copy thereof, *unless* within 90 days next preceding the expiration of the 3 year period, the mortgagee, his agent or attorney shall make and annex to the instrument or copy on file as aforesaid, an affidavit setting forth the names of the parties to the mortgage, the then owner of the mortgage, the time and place where filed, and the interest which the mortgagee has by virtue of said mortgage in the property therein mentioned, upon which affidavit the register of deeds shall endorse the time when the same was filed: *Provided,* That it shall not be necessary to file an affidavit of renewal in case of a trust mortgage, deed of trust or any similar or like indenture to secure bonds or obligations issued, or to be issued thereunder."

The acts of the parties are important in determining whether the instrument covering the personal property of ETC was a chattel mortgage or a trust mortgage. It may be assumed that the instrument was approved as to form, substance, and purpose by Anaconda, the Bank, and ETC as mortgagor. The following undisputed facts clearly show that the parties intended the instrument to be a chattel mortgage: It was entitled "chattel mortgage" and in the body of the instrument it was repeatedly referred to as a chattel mortgage. It provided for foreclosure in case of default in the manner provided by State law for the forclosure of a chattel mortgage. The president of ETC attached to the instrument the form of affidavit required by State law to be attached to a chattel mortgage, in which affidavit he stated:

"Affiant further states that the *chattel mortgage* executed by ETC * * * to Detroit Trust Company, Trustee, to which this affidavit is attached, was given for a consideration *to* ETC, Inc., * * * and said *chattel mortgage* was given in good faith; * * * that this affidavit is made for the purpose of authorizing filing of the foregoing *chattel mortgage* in accordance with the laws of the State of Michigan."

It should also be noted that ETC's promissory note dated May 10, 1954, to Anaconda for $150,000, which was secured in part by the chattel mortgage in question, contained the following statement:

"The payment of this note is secured by a Mortgage Trust Indenture, bearing even date herewith, to Detroit Trust Company, Trustee, on real estate in the County of Berrien, State of Michigan and by a *Chattel Mortgage,* bearing even date herewith, to Detroit Trust Company, Trustee, on machinery and equipment located in Berrien County, State of Michigan."

It should further be noted that the board of directors of ETC, the mortgagor, at a special meeting of the board held April 29, 1954, authorized the giving of a *chattel mortgage* on the company's personal property and that all of the stockholders of ETC, at a special meeting held the same day, authorized the giving of a *chattel mortgage* on its personal property.

The instrument entitled "chattel mortgage" was filed in the office of the register of deeds of Berrien county May 19, 1954, and as a chattel mortgage it would become void under § 566.143 quoted above, as against the creditors of ETC, after the expiration of three years from that date *unless* within 90 days next preceding the expiration of the three-year period on May 19, 1957, the mortgagee made and annexed to the instrument a proper affidavit of renewal setting forth certain facts required by the statute. Therefore, it is particularly significant that the Bank attempted to renew the instrument as a chattel mortgage by filing a purported affidavit of renewal April 23, 1957, and that in the affidavit of renewal the attorney for the Bank stated: "Affiant further states that this affidavit is made for the purpose of renewing a certain *chattel mortgage* dated May 10, 1954."

When the trustee in the present bankruptcy proceedings questioned the validity of the instrument as a chattel mortgage because of defective renewal, the Bank attempted to save the instrument by claiming for the first time that it was not a chattel mortgage requiring renewal but was a trust mortgage exempt from renewal under the proviso of § 566.143, which provides that "it shall not be necessary to file an affidavit of renewal in case of a trust mortgage, deed of trust or any similar or like indenture to secure bonds or obligations issued, or to be issued thereunder." It should be kept in mind that the instrument here in question did not secure any bonds or obligations issued or to be issued thereunder. It was entitled, authorized, executed, acknowledged, and treated as an ordinary chattel mortgage given by ETC as additional security for its promissory note for $150,000 to Anaconda.

■ The wording of the proviso in § 566.143 is plain and unambiguous. It exempts from the necessity of filing a renewal affidavit *only* those instruments which secure *"bonds or obligations issued, or to be issued thereunder."* The legislature modified, qualified, and limited the terms "trust mortgage, deed of trust or any similar or like indenture" by providing that they "secure bonds or obligations issued, or to be issued thereunder." Under the Bank's contention that the instrument is a trust mortgage, it would be necessary to ignore the words in the proviso, "to secure bonds or obligations issued, or to be issued thereunder." This cannot be done, as every word and term of the proviso must be given effect. In Lee v. Michigan Employment Security Commission, 346 Mich. 171, 178, 78 N.W.2d 309, 313, the court quoted with approval from City of Grand Rapids v. Crocker, 219 Mich. 178, 182, 183, 189 N.W. 221, as follows:

"If the language employed in a statute is plain, certain, and unambiguous, a bare reading suffices, and no interpretation is necessary. The rule is no less elementary that effect must be given, if possible, to every word, sentence, and section. To that end, the entire act must be read, and the interpretation to be given to a particular word in one section, arrived at after due consideration of every other section, so as to produce, if possible, a harmonious and consistent enactment as a whole."

See also Geraldine v. Miller, 322 Mich. 85, 95, 96, 33 N.W.2d 672; St. Helen Resort Association, Inc., v. Hannan, 321 Mich. 536, 543, 544, 33 N.W.2d 74; Gardner-White Co. v. State Board of Tax Administration, 296 Mich. 225, 295 N.W. 624.

■■ It is common knowledge that trust mortgages, deeds of trust, and similar indentures are generally given to secure bonds, debentures, and obligations sold and broadly distributed to the public. The owners of these types of securities are ordinarily scattered over a wide area and would have no personal contact with the mortgagor or mortgagee, and would have no means of renewing the trust instrument securing their holdings. By the enactment of the proviso in § 566.143 the legislature intended to protect the security of the widely scattered

holders of bonds, debentures, and like obligations, by exempting the trust mortgages or trust instruments securing the same from the renewal affidavits required for the renewal of chattel mortgages.

In determining the intention of the legislature in the use of the terms "trust mortgage, deed of trust or any similar or like indenture" in the proviso of § 566.143, the court may properly consider the use of the same or substantially similar words in prior Michigan statutes and the judicial interpretations thereof. In Act No. 114, Pub.Acts Mich. 1933, the legislature provided in part:

"As used in this act:

"The term 'trust mortgage' means any trust mortgage, trust indenture or deed of trust given to secure bonds or other obligations issued and authenticated as herein set forth."

In Act No. 55, Pub.Acts Mich.1933, the legislature defined the meaning of the words "trust mortgage" as follows:

"The term 'trust mortgage' as used in this act, means and includes, among other forms of trust mortgages, any mortgage given to any person or corporation engaged in the business of financing or refinancing buildings or building enterprises, securing a note, notes, bonds or obligations, and *which by its terms contemplates a sale thereof in part or parts* and which is actually sold in part or parts in form of certificates of participation or by assignments of undivided interests therein."

It may be assumed that the legislature was applying the same meaning to the terms "trust mortgage" and "deed of trust" in § 566.143 as it had applied to those terms in the prior statutes quoted above. That the term "trust mortgage" means an instrument securing bonds or securities issued in pursuance thereof, is indicated by the Supreme Court in the case of Equitable Trust Co. v. Milton Realty Co., 261 Mich. 571, 246 N.W. 500. In that case the Supreme

Court said at page 577 of 261 Mich., at page 502 of 246 N.W.: "In a trust mortgage, the ownership of the mortgage passes to the trustee and is held by it or him for the benefit of those who acquire title to the *securities issued pursuant thereto.*" The court is convinced that the legislature intended the terms "trust mortgage, deed of trust or any similar or like indenture" in § 566.143 to apply only to instruments given to secure bonds, debentures, and obligations to be issued, sold, and distributed to the public. It is clear that the Bank's present claim that the instrument was a trust mortgage is merely an attempt to avoid the requirement of § 566.143 that it be renewed as a chattel mortgage. Furthermore, to hold with the contention of the Bank that the instrument was a trust mortgage not requiring renewal, would open the door for banks, finance companies, and others to avoid the State statute requiring renewal of chattel mortgages merely by entitling the instrument a trust mortgage and designating an employee as mortgagee and trustee.

For the many reasons herein stated, the court concludes that the instrument here in question entitled "chattel mortgage" was a chattel mortgage and not a trust mortgage. However, as a chattel mortgage the instrument became void as to the creditors of ETC under the provisions of § 566.143 unless within 90 days next preceding the expiration of three years after it was filed the Bank as mortgagee made and annexed to the instrument a proper renewal affidavit as required by the statute. The instrument was filed May 19, 1954, and on April 23, 1957, the Bank attempted to renew it as a chattel mortgage by having its attorney file a renewal affidavit. The affidavit was signed by the attorney for the Bank and was sworn to before a notary public acting in Lake county, Indiana. However, it should be noted that the affidavit was not authenticated by the certificate of the clerk of a court of record in Lake county, under the seal of the court, as required by the Michigan statute, Comp.

Laws Mich.1948, § 617.14, which provides:

"In cases where by law the affidavit of any person residing in another state of the United States, or in any foreign country, is required, or may be received in judicial proceedings in this state, to entitle the same to be read, it must be authenticated as follows: * * *

"4. If such affidavit be taken in any other of the United States or in any territory thereof, it may be taken before a commissioner duly appointed and commissioned by the governor of this state to take affidavits therein, or before any notary public or justice of the peace authorized by the laws of such state to administer oaths therein. *The signature of such notary public or justice of the peace, and the fact that at the time of the taking of such affidavit the person before whom the same was taken was such notary public or justice of the peace, shall be certified by the clerk of any court of record in the county where such affidavit shall be taken, under the seal of said court.*"

The trustee in bankruptcy contends that the renewal affidavit filed was invalid and did not effect a legal renewal of the chattel mortgage, because it was not authenticated by the certificate of the clerk of a court of record in the county in which the notary acted, under the seal of the court, as required by § 617.14 quoted above.

▉ Therefore, the next question is whether the renewal affidavit effected a legal renewal of the instrument as a chattel mortgage as against the creditors of ETC and its trustee in bankruptcy. This question as to the legality of the affidavit of renewal must be determined under the law of Michigan. Dean v. Planters National Bank of Hughes, D.C., 176 F.Supp. 909, 912. In Berkery v. Circuit Judge of Wayne County, 82 Mich. 160, 46 N.W. 436, an affidavit for a transcript of judgment from an Ohio justice's court to a Michigan circuit court was sworn to in Ohio. The court held the transcript invalid, stating at pages 167, 168 of 82 Mich., at page 438 of 46 N.W.:

"A more serious objection to the affidavit of James B. Bortz is that it does not appear to have been sworn to before any officer authorized to administer oaths. It purports to have been sworn to before 'Thomas J. Corkery, Notary Public, Lucas county, Ohio,' and he has attached a notarial seal. But in this State a notarial seal is not recognized as evidence of the authority of a notary to administer an oath. The authority of notaries to administer oaths is usually conferred by statute, and does not pertain to their office by usage or custom. * * * The affidavit of Bortz of the amount due was to be used in a judicial proceeding in this State. To entitle it to be used it was necessary that it should have been certified under How.Stat. § 7448 (subd. 3).

"Attention is called to the language of this section, that 'to entitle the same [affidavit] to be read it must be authenticated,' etc., and it is claimed that, as the affidavit required by section 6948 is only to be *filed* by the clerk, this statute does not apply. This would be a too narrow construction to put upon the language of the statute. * * * This affidavit is jurisdictional, and the foundation of a judgment in the circuit court; and it would indeed be a strange construction to give this statute that no affidavit taken in another state to be used in a judicial proceeding could be read unless authenticated as required by this section, and yet an affidavit which is to give the court jurisdiction may be filed or used without authentication, and without any certificate of the authority of the officer to administer oaths, or of the genuineness of his signature. The affidavit without such authentication was a nullity,

and gave no jurisdiction to the clerk to file the transcript, or enter and docket the judgment."

In re Alston's Estate, 229 Mich. 478, 201 N.W. 460, a legatee filed a petition for a delayed appeal from the allowance of a claim. The petition was sworn to before a notary public in North Dakota, but the certificate of the clerk of the district court of that county did not authenticate the signature of the notary public and did not show that the notary was authorized to administer oaths under the laws of that State. No evidence was presented at the hearing on the petition, and the petitioner relied on the petition alone. In affirming the trial court's dismissal of the petition, the Supreme Court stated at pages 481, 482 of 229 Mich., at page 461 of 201 N.W.:

"The (Michigan) Legislature has by mandatory provision fixed the requirements necessary to entitle an affidavit sworn to outside the state to consideration. This court in the case cited (Berkery v. Wayne Circuit Judge, 82 Mich. 160, 46 N.W. 436) has held that, unless the requirements are met, the affidavit is a nullity. Unless we overrule this case and by judicial legislation amend this statute, we must hold that the trial judge could not consider this affidavit. Without it he would not, of course, be authorized to grant the delayed appeal."

In Central Bldg. Co. v. Alma Development Co., 6 Cir., 265 F. 254, in considering an affidavit purporting to have been verified by a notary public in Worcester county, Massachusetts, but which was not authenticated as required by the law of Michigan, the appellate court for this circuit said at page 256:

"The pivotal question is whether, as appellant contends, this requirement of authentication is confined to such affidavits as are to be 'received in judicial proceedings,' or whether it extends to all cases where by law such affidavit 'is required.' We think the latter the natural and correct construction. * * *

"This interpretation is reinforced by the inherent improbability that the Legislature intended to limit the provisions of the statute to judicial proceedings, in which the official character and signature of the notary would always be open to direct proof, rather than to make it applicable also to the large and important class of cases in which the validity of a lien or of a notice depends upon proper verification as entitling it to be read, as in the case of mechanic's lien proceedings and *chattel mortgages* (People, [for Use of Esper] v. Burns, 161 Mich. 169, 125 N.W. 740, 137 Am.St.Rep. 466), and the effectiveness of the verification depends solely on the fact of notarial authority and signature of an officer outside the state, with respect to which the citizens of this state have no immediate means of knowledge * * *. The Legislature could not, we think, have contemplated that the fact of such notice should be left to stand or fall by proof outside the record that the alleged notary had or had not such official character, or that the signature was or was not his, as the case might prove.

"The words 'to entitle the same to be read' do not, in our opinion, militate against the construction of the statute above announced. * * *

"The requirement of an affidavit presupposes that it is intended to be read. That is bound to be so where an affidavit is required by statute for purposes of notice and evidence of fact. Indeed, an affidavit of the character in question here should be read by the register of deeds before recording to determine whether it meets statutory requirements, and so is entitled to record.

"Our interpretation of the statute accords with what we understand to be the construction generally accepted by the bench and bar of Michigan, and such interpretation should not be lightly ignored. * * *

"It follows that the affidavit of demand in the case at bar was not authenticated as required by (the Michigan) statute, and therefore was not entitled to record, and the court was thus without jurisdiction to enforce the same."

The foregoing authorities have not been overruled and clearly establish the law of Michigan that an affidavit not authenticated as required by § 617.14 quoted above is a nullity. Therefore, the renewal affidavit filed by the mortgagee Bank April 23, 1957, which was not authenticated as required by the Michigan statute, was a nullity and did not effect a legal renewal of the chattel mortgage here in question. The Bank as mortgagee is presumed to know the law, and it cannot escape the result of its failure to comply with the law of Michigan regarding the affidavit required for renewal of its chattel mortgage.

Under Comp.Laws Mich.1948, § 566.-143, the chattel mortgage filed May 19, 1954, became void May 19, 1957, as to all creditors of ETC, because it was not properly renewed as required by the statute. It appears from undisputed testimony that on and after September 17, 1957, the Grover-Hendricks Company extended credit to ETC and that the indebtedness arising from that credit was not paid before the petition in bankruptcy was filed. Since under § 566.143 the chattel mortgage was void as to the Grover-Hendricks Company, it is clear that under § 70, sub. e of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. e, it was also void as to the trustee in bankruptcy, who represented all creditors of ETC at the time it was adjudged bankrupt. See Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133; General Motors Acceptance Corporation v. Coller, 6 Cir., 106 F.2d

584, certiorari denied 309 U.S. 682, 60 S.Ct. 723, 84 L.Ed. 1026; In re Tobias, D.C., 150 F.Supp. 288; In re Cotter, D.C., 113 F.Supp. 859, 860; In re Truscott Boat & Dock Co., D.C., 92 F.Supp. 430; Deane v. Fidelity Corporation of Michigan, D.C., 82 F.Supp. 710; Ransom & Randolph Co. v. Moore, 272 Mich. 31, 261 N.W. 128; Klingensmith v. James B. Clow & Sons, 270 Mich. 460, 259 N.W. 312; 4 Collier on Bankruptcy, 14th ed., pages 1532–1536.[1]

The Bank has recently advanced the further argument that Act No. 106, Pub.Acts Mich.1961, defeats the trustee's claim that the affidavit filed by the Bank for renewal of the chattel mortgage in question was a nullity because not authenticated as expressly required by the State statute, § 617.14. This argument by the Bank is without merit, as Act No. 106 amends only § 566.140 hereinbefore quoted, which relates to the form of affidavit required to be annexed to a chattel mortgage before it can be filed in the office of the register of deeds. The 1961 amending act, No. 106, reads as follows:

"Section 10 of chapter 81 of the Revised Statutes of 1846, as last amended by Act No. 110 of the Public Acts of 1959, *being section 566.-140 of the Compiled Laws of 1948*, is hereby amended to read as follows:

"Sec. 10. Every mortgage or conveyance intended to operate as a mortgage of goods and chattels which shall hereafter be made which shall not be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and

---

1. In his briefs the trustee in bankruptcy contends that the chattel mortgage here in question was void under the holding in Constance v. Harvey, 2 Cir., 215 F.2d 571. In that case there was no intervening creditor, and the court held that under § 70, sub. c of the Bankruptcy Act, a trustee was entitled to be put in the position of a hypothetical creditor.

The decision in Constance is not applicable in the present action where there is an actual, intervening creditor. Furthermore, the holding in Constance was overruled by the Supreme Court in Lewis v. Manufacturers National Bank of Detroit, 1961, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed. 2d 323.

as against subsequent purchasers or mortgagees in good faith, unless the mortgage or a true copy thereof shall be filed in the office of the register of deeds of the county where the goods or chattels are located, and also where the mortgagor resides: * * * Provided, however, That no such mortgage shall be void as against the creditors of the mortgagor if filed within 10 days from the date of the execution of such mortgage; and unless the mortgagor or mortgagee named in such mortgage or conveyance intended to operate as a mortgage, or some person having knowledge of the facts shall, before the filing of the same, make and annex thereto an affidavit setting forth that the consideration of said instrument was actual and adequate, and that the same was given in good faith for the purposes in such instrument set forth; *except* that no defect in the affidavit shall make any mortgage heretofore or hereafter filed void as against the creditors of the mortgagor, and as against subsequent purchasers or mortgagees in good faith, if the consideration of the instrument was actual and adequate and was given in good faith for the purposes set forth in the instrument. No officer shall receive such instrument or file the same in his office until such affidavit is made and annexed thereto."

It should be noted that this amending act, No. 106, makes no reference to and does not amend the chattel-mortgage-renewal statute, § 566.143 hereinbefore quoted. It is clear that the 1961 act applies only to the affidavit required by § 566.140 for the original filing of a chattel mortgage and does not apply to the affidavit required by § 566.143 for the renewal of a chattel mortgage. Therefore, the 1961 amendment has no bearing on the question in the present case as to the legality of the chattel-mortgage-renewal affidavit filed by the Bank.

For the reasons herein stated the court concludes as follows:

(1) That as no question is raised by the trustee in bankruptcy as to the validity of the trust indenture covering the real estate of ETC, the referee's holding that the trust indenture was valid is affirmed.

(2) That the instrument entitled "chattel mortgage" executed by ETC to the Detroit Trust Company as of May 10, 1954, and covering the personal property of ETC is a chattel mortgage and not a trust mortgage within the meaning of Comp.Laws Mich.1948, § 566.143 as amended.

(3) That the decision of the referee that said instrument was a trust mortgage is erroneous and is reversed.

(4) That said instrument, being a chattel mortgage, was required by § 566.-143 to be renewed by a proper affidavit of renewal, duly authenticated as required by the State statute, § 617.14.

(5) That as the purported affidavit of renewal of the chattel mortgage filed by the Bank April 23, 1957, was not authenticated as required by the State statute, § 617.14, it was a nullity and did not effect a legal renewal of the chattel mortgage as to creditors of ETC and its trustee in bankruptcy.

(6) That under Comp.Laws Mich.1948, § 566.143, the chattel mortgage in question became void May 19, 1957, as to all creditors of ETC, because it was not renewed prior to that date by a proper and legal affidavit of renewal.

(7) That on and after September 17, 1957, the Grover-Hendricks Company in good faith extended credit to ETC without notice or knowledge of the existence of the chattel mortgage, and the indebtedness arising from that credit was never paid.

(8) That since under Comp.Laws Mich.1948, § 566.143, the chattel mortgage was void as to the Grover-Hendricks Company, an interim creditor, under § 70, sub. e of the Bankruptcy Act it was void as to the trustee in bankruptcy of ETC.

(9) That the decision and order of the referee entered December 8, 1958, that the trustee pay to the Bank the sum of $73,199.11 less a proportionate share of the expense of the sale of the property, is erroneous and is reversed.

(10) That the trustee in bankruptcy is entitled to retain and hold the full proceeds realized from the sale of the personal property of ETC covered by the chattel mortgage in question.

In view of the court's conclusions other questions presented do not require consideration or determination. An order will be entered in accordance with this opinion, and this proceeding is remanded to the referee in bankruptcy for further action not inconsistent herewith.